Clyde GRAHAM, Appellant,

v.

UNITED STATES, Appellee.

No. 11222.

District of Columbia Court of Appeals.

Argued May 18, 1977.

Decided Sept. 13, 1977.

John A. C. Keith, Washington, D. C., appointed by this court, for appellant.

Jonathan Lash, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Alexia Morrison, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and YEAGLEY and MACK, Associate Judges.

## PER CURIAM:

Appellant Graham was convicted by a jury of kidnapping, assault with intent to rape, assault with intent to commit sodomy, assault with intent to kill while armed, robbery, and grand larceny.[1] He challenges his convictions on the grounds that (1) the trial court improperly admitted evidence of a pretrial identification; (2) the government's evidence was not sufficient to support the convictions; and (3) the trial court erred in failing to grant a continuance to allow a witness who was temporarily unavailable to testify on behalf of the defense. Finding no error, we affirm.

The government's evidence established that on the evening of November 19, 1975, the complainant was accosted in the elevator of her apartment building and then forced outside the building into the back seat of her car by three men. Two men sat in front, and appellant sat in the back. She testified that as she left the building she was able to view her abductors for "about 15 seconds," and that she observed appellant's "full face."

After driving through southeast Washington for approximately 45 minutes, the three men stopped in Anacostia Park where appellant attempted to commit sodomy with the complainant. Thereafter, she was ordered out of the back seat and into the trunk of the car. She testified that at one point she overheard her abductors discussing killing her because she would be able to identify them. Sometime later, the car stopped at a gas station and all three men entered the station to purchase some candy. The complainant's ordeal finally ended when she was forced out of the trunk and into a nearby wooded area. There, while appellant and one of the men stood behind, the driver of the car drew a knife and stabbed her in the back, chest and thigh. The complainant nonetheless survived.

Approximately three weeks after the incident, the complainant positively identified appellant at a lineup. Louis Gaskins, an attendant at the gas station at which the three men stopped, was also present at the lineup but he said he could not identify anyone while in the lineup room. Later, however, he volunteered to a friend who had accompanied him to the police station that he had in fact recognized appellant as the man who emerged from the back seat of the victim's car. Later that same evening while looking at a photographic array at a United States Park Police office, he volunteered that at the lineup he had recognized the number four man as Graham. He testified at a pretrial suppression hearing that he initially withheld his identification because he did not want "to get involved."

First raised is the question whether the trial court erred in admitting the identification testimony of Louis Gaskins. Appellant argues that because the witness did not identify him until after the lineup, out of the presence of defense counsel, he was deprived of his Sixth Amendment right to counsel. Further, the post-lineup identification was so unreliable that it "created a substantial likelihood of irreparable misidentification,"[2] and hence any testimony at trial concerning that identification violated appellant's due process right.

1. D.C.Code 1973, §§ 22–2101, –501, –503 and –3502, –501 and –3202, –2901, and –2201 respectively.

2. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Appellant relies on *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and its progeny to support his claim that he was denied his right to counsel. Although *Wade* and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) both hold that the Sixth Amendment entitles an accused to the aid of counsel during a lineup procedure, the Supreme Court has never extended the scope of that right beyond the actual confrontation between the accused and the victim or witnesses to a crime from whom identification evidence is elicited. In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court reaffirmed that the rationale of *Wade* was based upon the possible intentional or unintentional suggestivity inherent in the actual confrontation, and the difficulty at trial of establishing the circumstances under which a lineup proceeded. The Court concluded that *"Wade* and *Gilbert* affect only those cases and all future cases which involve *confrontations for identification purposes conducted in the absence of counsel."* *Id.* at 296, 87 S.Ct. at 1969 (emphasis added).

Our interpretation of the scope of *Wade* and *Gilbert* follows that taken by the court in *United States v. Cunningham,* 423 F.2d 1269 (4th Cir. 1970). There, a witness identified the accused during a post-lineup interrogation session in which defense counsel were excluded. However, counsel had been present at the earlier interrogation that immediately followed the lineup viewing. Finding no Sixth Amendment violation, the court concluded:

> While *Wade* and *Gilbert* both hold that under the Sixth Amendment an accused is entitled to the aid of counsel at the lineup, we cannot read the scope of the holding to extend beyond the actual confrontation between the accused and the victim or witnesses to a crime from whom identification evidence is sought to be elicited. . . . By the rationale of *Wade* and *Gilbert,* counsel was no longer required unless we were prepared to hold that defense counsel must be present whenever the government interrogates a witness whose testimony may be used as a part of the government's case at trial.

> . . . It is not claimed that to date the Supreme Court has required the presence of counsel during the interrogation of all witnesses, and we will not so require with regard to the interrogation of identification witnesses once the actual confrontation has been completed. [*Id.* at 1274 (footnote omitted).]

In the present case, the lineup procedure had terminated when the witness volunteered to the authorities that he in fact recognized the defendant. This is not a situation where the government sought to evade the defendant's right to counsel by excluding counsel after the lineup viewing but before the witness was asked about his ability to make an identification. *Cf. United States v. Banks,* 485 F.2d 545 (5th Cir.), *cert. denied,* 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1973). We do not have that situation before us. Here counsel had been present at the lineup when the witness said he did not recognize anyone. The critical confrontation and concomitant right to counsel contemplated in *Wade* and *Gilbert* had been provided and had ended. We therefore reject appellant's argument. *See United States v. Wilcox,* 507 F.2d 364 (4th Cir. 1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975).

■ Equally without merit is appellant's contention that the witness' identification following the lineup was so unreliable that it violated the standard for pretrial identification evidence enumerated in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). We note there is nothing in the record to suggest that the circumstances surrounding the witness' disclosure were in any way suggestive, or that an investigating officer may have pressured the witness into making the identification. The Supreme Court recently upheld a pretrial identification procedure in which a victim was allowed to view a single photograph of a suspect which had been selected on the basis of the victim's earlier description to the police. The Court stated:

> [R]eliability is the linchpin in determining the admissibility of identification testimo-

ny for both pre- and post-*Stovall* confrontations. The factors to be considered are set out in *Biggers*, 409 U.S., at 199–200 [93 S.Ct. [375] at 382] These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. [*Manson v. Brathwaite*, —— U.S. ——, ——, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).]

Considering those factors in the present case, we conclude that there was not a "very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

Appellant next argues that the government's evidence of guilt was not sufficient to support his convictions. In particular, he attacks the strength of the identification testimony and the evidence concerning the charge of assault with the intent to kill while armed.

■ In assessing the sufficiency of the evidence, this court must give the government the benefit of all reasonable inferences. *Richardson v. United States*, D.C.App., 366 A.2d 433 (1976). Full allowance must be made to the trier of fact to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and a conviction will not be reversed as long as there is evidence which reasonably permits a finding of guilt. *Manago v. United States*, D.C.App., 331 A.2d 335 (1975).

■ In the present case, the complainant positively identified appellant as one of her attackers both at trial and at the lineup. She also identified the defendant's photograph, and she gave an in-court description of her assailant which was in agreement with that given by witness Gaskins. Such identification evidence was sufficient for a jury to reasonably conclude that the defendant was among the complainant's attackers.

■ With respect to the evidence that Graham was guilty of assault with intent to kill while armed, it is settled law that an individual who knowingly participates in the commission of a criminal act by assisting the principal is equally liable. D.C.Code 1973, § 22–105; *Byrd v. United States*, D.C. App., 364 A.2d 1215 (1976). In this connection, the government need only establish (1) that an offense was committed by someone; (2) that the accused assisted or participated in its commission; and (3) that he or she did so with guilty knowledge. *Id.* at 1219. We find that the evidence in the present case satisfied each of these elements.

■ Finally, we reject appellant's contention that the trial court erred in not continuing the case until an alibi witness was released from a local hospital. The record indicates that defense counsel did not request such a continuance, and this court's review is therefore limited to a determination whether the trial court's failure sua sponte to grant additional time to appellant amounted to "plain error." *Simmons v. United States*, D.C.App., 364 A.2d 813 (1976). Here, the trial court granted an earlier defense request for time to inquire further as to the witness' availability. After it was apparent that the witness would not be able to testify, defense counsel requested, and the government agreed, to a stipulation regarding her absence. If, as appellant contends, the presence of the witness "was so essential to the credibility" of his alibi defense, it was incumbent upon counsel to draw the trial court's attention to the need for further delay in the proceedings. We cannot agree that the trial court committed reversible error in failing to sua sponte grant a continuance.

Accordingly, the judgment of conviction appealed from is hereby

*Affirmed.*