Michael M. SMITH, Appellant,

v.

UNITED STATES, Appellee.

Edward M. WASHINGTON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 12173, 12426.

District of Columbia Court of Appeals.

Argued May 9, 1978.

Decided July 25, 1978.

David T. Austern, Washington, D. C., for appellant Smith.

Kenneth M. Robinson, Washington, D. C., for appellant Washington.

Michael L. Lehr, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Joseph B. Vald-

er, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, YEAGLEY and HARRIS, Associate Judges.

PER CURIAM:

■■■ This case arose from the abduction and rape of a young woman on the morning of January 23, 1976. As she left her apartment to catch a bus to work, two men forced her into a car and drove to the Kenilworth Landfill where both of the men raped her at gunpoint and took forty cents from her purse. Subsequently, both appellants were found guilty by a jury of armed kidnaping,[1] armed rape,[2] armed robbery,[3] and carrying a pistol without a license.[4] On appeal, appellant Smith alleges that the trial court committed reversible error (1) in excluding expert testimony on the psychological principles underlying eyewitness identification and expert testimony concerning a polygraph examination; and (2)

in failing to admit direct evidence at trial tending to incriminate another person who looked like appellant Smith. Appellant Washington argues that his motion for judgment of acquittal should have been granted.[5] Both appellants contend that the trial court improperly communicated with the jury outside the presence of appellants or their attorneys. We affirm the convictions.

■■■ It is well established that a "trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 834 (1962). In this case, the trial court refused to permit appellant Smith to introduce expert testimony on the psychology of memory and perception. This court recently considered the issue of testimony by a psychologist concerning eyewitness identification and

1. D.C.Code 1973, §§ 22–2101, –3202.

2. D.C.Code 1973, §§ 22–2801, –3202.

3. D.C.Code 1973, §§ 22–2901, –3202.

4. D.C.Code 1973, § 22–3204.

5. The trial court may not enter a judgment of acquittal if the evidence produced at trial is such that a reasonable juror could fairly conclude beyond a reasonable doubt that the defendant was guilty. (*James*) *Williams v. United States*, D.C.App., 357 A.2d 865, 867 (1976). Where, as in this case, the finding of guilt rests upon the positive identification of a single eyewitness, the standard is that so long as a reasonable juror could find the circumstances surrounding the identification to be convincing beyond a reasonable doubt, the case must be submitted to the jury. *See Berryman v. United States*, D.C.App., 378 A.2d 1317, 1321 (1977); *Graham v. United States*, D.C.App., 377 A.2d 1138, 1141 (1977). Furthermore, in assessing the sufficiency of the evidence, the appellate court must review the record in the light most favorable to the government, making allowance for the right of the jury to determine the credibility of the witnesses and to draw justifiable inferences from their testimony. *Franey v. United States*, D.C.App., 382 A.2d 1019, 1022 (1978).

We find ample evidence in the record to support submission of this case to the jury. The complainant, who had training as a portrait artist, had a good opportunity to observe

appellant Washington at close range both during the rape and prior to it, for while she was being driven to the landfill appellant Washington was in the passenger seat and turned to face her when talking to her.

He argues, however, that descriptions of the passenger given by the complainant did not fit him. This contention is frivolous. He alleges that she once stated that the passenger, unlike himself, had reddish-brown hair, yet the complainant's testimony directly contradicts this assertion. Moreover, although she stated that the passenger did not have a beard and he testified that he had worn a beard for several years, there is no real inconsistency since the complainant stated that at the time of the rape the passenger had a couple of days' stubble from not shaving, and appellant Washington subsequently characterized such stubble as a "beard." Furthermore, the complainant twice identified appellant Washington from photographic arrays (once tentatively and once positively), she selected him from a police lineup, she spontaneously identified him as one of her abductors when she saw him in a courthouse hallway prior to a pretrial suppression hearing (both appellants were at that time free on their own recognizance), and she identified him at trial. Such identification testimony was sufficient for the jury reasonably to conclude that the defendant was one of her assailants. *See* (*Nathan*) *Williams v. United States*, D.C.App., 355 A.2d 784, 786 (1976).

concluded that the subject matter of such testimony is not "beyond the ken of the average layman," nor would it "aid the trier in his search for the truth." *Dyas v. United States*, D.C.App., 376 A.2d 827, 832, *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977). Because the subject matter of the testimony proffered in the present case is similar to the evidence offered there, *Dyas* controls this case and the evidence was properly excluded.[6] Moreover, we note that here, as in *Dyas*, trial counsel had ample opportunity to test the reliability of the complainant's identification through vigorous cross-examination. *Id.* at 832.

◼ Similarly, the trial court did not abuse its discretion in refusing to admit testimony by an examiner concerning the results of a polygraph examination of appellant. Because of the authoritative quality which surrounds expert opinion, courts must reject testimony which might be given undue deference by jurors and which could thereby usurp the truthseeking function of the jury. *See Douglas v. United States*, D.C.App., 386 A.2d 289, 295 (1978); *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973). Consequently, the results of polygraph examinations are inadmissible. *See United States v. Alexander*, 526 F.2d 161, 168 (8th Cir. 1975); *United States v. Skeens*, 161 U.S.App.D.C. 131, 134, 494 F.2d 1050, 1053 (1974); *Frye v. United States*, 54 App.D.C. 46, 47, 293 F. 1013, 1014 (1923). The trial court therefore did not abuse its discretion in excluding the expert testimony proffered at trial by appellant Smith.

Appellant Smith also contends that the trial court committed reversible error in failing to admit *direct* evidence which tended to incriminate a person who had been convicted of a previous rape and who looked somewhat like appellant. He argues that such evidence is admissible "when it tends to show that someone similar in appearance to defendant was perpetuating criminal ac-

tivity similar to the charges at trial." *United States v. Hallman*, 142 U.S.App.D.C. 93, 95, 439 F.2d 603, 605 (1971).

The complainant testified that after she had been raped by the driver, she noticed a green checkbook beside her on the seat. She thought that it might help her identify her assailants, and so she tried to hide it under her coat. As she did so, she observed the name "Ronald M," but she was unable to determine whether the "M" was a middle initial or the first letter of a last name. She did not get a further look at the checkbook because the passenger discovered it when he got into the back seat to rape her, and he placed it in his pocket after upbraiding the driver for "leaving things behind." All of the preceding testimony was presented to the jury. In addition, the parties entered into a stipulation, which was read to the jury, to the effect that a person named Ronald Malcolm had been convicted of a rape which had occurred in the District of Columbia on December 17, 1975, approximately five weeks prior to the present incident, and that Malcolm had been in the city six days after complainant had been raped. Moreover, photographs of both Malcolm and appellant were available for the jury to make comparisons of their features. Nevertheless, appellant Smith contends that these measures were inadequate, and that the trial court should have admitted testimony by one of the women who had been raped by Malcolm in December 1975, which would have allegedly revealed certain similarities between the two incidents. Following a hearing outside the presence of the jury at which one of the victims of the December rape testified, the trial court found, however, that there were *not* "sufficient similarities between the incidents . . . to permit a detailed reference to the matter involving [the rape of which Ronald Malcolm had been found guilty]."

◼ Once a trial judge has determined whether the proffered evidence is

---

6. Although the trial court in the present case did not hold an evidentiary hearing to ascertain the content of the desired testimony as had occurred in *Dyas*, the substance of the prof-
fered testimony was sufficiently presented in pretrial motions for the judge to make an informed ruling on the issues.

relevant, and once he has weighed the probative value of that evidence against its potentially prejudicial impact, his judgment will not be overturned unless he has abused his discretion. *Punch v. United States*, D.C. App., 377 A.2d 1353, 1358 (1977). A careful review of the record reveals no abuse of discretion in the present case. Although there were certain similarities in the two events—an abduction by car of women from a public street and conversation between the assailants concerning whether they should take the victims to the "usual place"—there were far more significant *differences* between the two cases. In this case, a single victim was abducted by two men in a green Ford LTD who took her to a landfill and raped her at gunpoint, after which they rifled her purse and took 40 cents, in an incident which lasted, in its entirety, less than an hour. In the incident for which Ronald Malcolm was convicted, two women were abducted by four men in a brown Ford Galaxie 500 and were taken to an apartment where a fifth man waited; there, in an incident which lasted over four hours, they were raped by all five men but they were not robbed, and although one of the men talked about having a gun, the victims never saw a weapon. On these facts, the trial court correctly concluded that "there is nothing particularly identifying as far as these two incidents are concerned as to lead one to the reasonable conclusion that the persons involved in one are reasonably likely to be involved in the other." Furthermore, it is relevant to note that the complainant in this case selected appellant as her assailant from a lineup in which both appellant and Ronald Malcolm were present.

▬ Appellants contend, finally, that the trial court improperly communicated with the jury·without notifying either appellants or their counsel. The record reveals that the jury began deliberating late in the afternoon of Friday, March 4, 1977,

after five days of trial. On Monday, March 7, the second day of deliberation, the court received two notes from the jury. At approximately 3 p. m. that day the judge informed counsel that he had received a lengthy note from the jury, but that he had not read it because he suspected that it might contain inappropriate information. He advised counsel that he had, however, asked a law student who had no connection with the case to read it, and that the note revealed the numerical division of the jury at that time.[7] The court therefore was returning the note to the jury with the following communication:

> This note has not been read. · I did not read it because of its obvious length. I have asked someone to read it and have been informed that you have mentioned your number in this note. You may not do that again at any time. You may send me a note that does not contain any information about your number.

About an hour later, at approximately 4 p. m., the court received a second note indicating that the jury was unable to reach a unanimous decision. The judge did not respond to this note; instead, without informing appellants or their counsel of this second communication, the court shortly thereafter excused the jury until the next morning.

At 12:47 p. m. the following day the jury returned a verdict of guilty and, after being polled, was excused. At that time the court informed counsel of the second note from the jury. He explained his reasons for not earlier informing counsel of this communication as follows:

> [It] was simply a note which said that they were unable to reach a unanimous decision which told me absolutely nothing. I know that that is the case as long as they have not returned a verdict. They did not at all indicate that they were deadlocked. They simply informed

---

7. The jury's inadvertent revelation of its numerical division, without inquiry from the court, did not provide automatic grounds for a mistrial. *Compare Jackson v. United States*, D.C.App., 368 A.2d 1140, 1143 (1977), with

*United States v. Diggs*, 173 U.S.App.D.C. 95, 107, 522 F.2d 1310, 1322 (1975), *cert. denied, Floyd v. U. S.*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976).

me that at that time they had not been able to reach a unanimous verdict which as I said, it told me nothing that I didn't already know. . . .

■ A defendant and his counsel have a right to be informed of all communications from the jury and to offer their reactions before the trial judge undertakes to respond. *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). *See Shields v. United States,* 273 U.S. 583, 587–88, 47 S.Ct. 478, 71 L.Ed. 787 (1927); Super.Ct.Cr.R. 43. In the present case, of course, the trial judge made no response at all to the second note from the jury around 4 p. m. indicating they had not reached a unanimous verdict. Appellants therefore cannot argue that the trial court erred by communicating with the jury without notifying them; instead, they are asking us, in effect, to consider the judge's failure to respond, in combination with his subsequent excusing of the jury for the night, to have amounted to a communication from the court which improperly pressured the jury to reach agreement. Particularly in light of the judge's comment that the note did *not* indicate that the jury was deadlocked, but merely that they had not yet reached a verdict, it is speculative to interpret the jury's note as tantamount to a request for additional instructions. *Cf. United States v. Schor,* 418 F.2d 26, 29–30 (2d Cir. 1969). Nevertheless, because of the ambiguity created by the court's procedure in this case, we will assume arguendo that the jurors could have interpreted the court's reaction as an implicit instruction to continue their deliberations.

■ Despite the importance of the right of an accused person to be present at every stage of the trial, a failure to comply with Rule 43 does not require automatic reversal and may in the proper circumstances be harmless error. *Rogers v. United States, supra* at 40; *United States v. Diggs,* 173

U.S.App.D.C. 95, 104, 522 F.2d 1310, 1319 (1975), *cert. denied, Floyd v. U. S.,* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976). Consequently, we look at the facts of the present case to determine whether appellants suffered any prejudice from the trial court's failure to inform them of the second jury note. *See United States v. Schor, supra* at 30; *Walker v. United States,* 116 U.S.App.D.C. 221, 222, 322 F.2d at 434, 435 (1963).

■ All parties here were aware from the first note (and from the fact that the jury had not yet returned a verdict) that there was in fact no unanimity among the jurors at 3 p. m. on March 7. This alone would not have been unusual, for the trial had been long and fairly complex. When the jury communicated with the judge at about 4 p. m., the court did not respond to their note but instead, shortly thereafter, excused the jury for the day. Although the jury indicated merely that they had not yet reached unanimity, we note that if at this stage a deadlock had been apparent, an appropriate supplemental jury instruction would have been permissible. *Winters v. United States,* D.C.App., 317 A.2d 530, 532–34 (1974) (en banc). The next morning when the jury returned, they deliberated for several more hours before reaching a decision. Under the particular circumstances of this case, we cannot say that the neutral actions of the trial judge, who made no direct response to a jury note which did *not* reveal a deadlock but instead excused the jury at day's end, had the effect of coercing the jury into rendering a verdict which they were reluctant to return. *See Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *Winters v. United States, supra* at 532. Therefore the trial court's actions in this case did not prejudice the appellants,[8] and the convictions are

*Affirmed.*

---

8. Appellant Smith contended at trial (in an argument which appellant Washington joins on appeal) that they were prejudiced by the failure of the court to inform them of the second note until after the verdict because such knowledge

would have "re-enforced what my intentions were this morning," namely, to move for a mistrial, "based on both the length of the deliberations by the jury and the fact that contrary to the specific instructions of this Court, the

Appellant brought an action in July 1975, seeking reconveyance of a piece of residential property, rescission of a contract, deed of trust and note, an injunction prohibiting appellee from conveying any right or title to the property during the pendency of the jury had sent to this Court information indicating not only that they were unable to reach a verdict but an actual division." Defense counsel failed, however, to act on these intentions. In light of the fact that the defense counsel admitted that in his own mind there were sufficient grounds to request a mistrial "even without the knowledge" of the second note, and counsel's failure nonetheless to make the motion, it would be speculation on our part to assume that counsel would have acted any differently if he had possessed knowledge of the second note. Moreover, the trial court explicitly stated that "in a case which has consumed as much time as this case did," the court would have refused to grant a mistrial if the motion has been made on these grounds. Given the length of the trial in this case, and given the fact that the jury's inadvertent revelation of its numerical division would not in this case have provided grounds for a mistrial, see note 7, infra, it was well within the trial court's broad discretion to have so ruled. See Illinois v. Somerville, 410 U.S. 458, 462, 98 S.Ct. 1066, 35 L.Ed.2d 425 (1973); Hammond v. United States, D.C.App., 345 A.2d 140, 141 (1973).