Fourth Division
May 15, 2008

No. 1-05-1149

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04 CR 21087 |
| | ) | |
| WILLIE McLAURIN, | ) | |
| | ) | Honorable James M. Schreier, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE NEVILLE delivered the opinion of the court:

After a jury trial, the defendant, Willie McLaurin, was convicted of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A)(West 2004)) and unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2004)), and he was sentenced to six years' imprisonment. On appeal, he contends (1) that his constitutional and statutory right to be present at his trial was violated when, without his consent or knowledge, he was excluded from discussions of the jury's five notes that were sent to the trial judge during the jury's deliberations; and (2) that he was denied his due process right to a fair trial by an impartial jury when the trial court permitted the sheriff to have an ex parte discussion with the deadlocked jury.

BACKGROUND

McLaurin was charged in an information with aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2004)) and unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2004)). His prior felony conviction was predicated upon a federal bank robbery

conviction. After pretrial motions were disposed of by the court, the defendant's case proceeded to trial.

The State's Case

At trial, Chicago police officer John O'Carroll testified that on August 17, 2004, at 2:30 a.m., he and his partner, Officer Langle, turned their MARS lights on and pulled a car over on 15th Street because the car's driver and front seat passenger were not wearing seat belts.[1] Officer O'Carroll testified that as he and his partner sat in their patrol car, which was parked behind the car they had stopped, he observed a black male in the backseat moving back and forth, his head was turning back and forth, and his hands were moving in front of his body. Based upon the black male's movements in the backseat, Officers O'Carroll and Langle exited their patrol car. Officer O'Carroll explained that after he exited his vehicle on the passenger side of both vehicles, he pulled his weapon and while holding his flashlight in his other hand, he announced, "Chicago police officers. Let me see your hands." When he and his partner were 10 to 15 feet from the stopped car, Officer O'Carroll testified that the man in the backseat, whom O'Carroll identified as the defendant, jumped out on the driver's side and began running eastbound on 15th Street. Officer O'Carroll radioed for backup, gave chase, and followed McLaurin down 15th Street.

On cross-examination, Officer O'Carroll testified (1) that the car they stopped was a two-

---

[1] Section 12-603.1 of the Illinois Vehicle Code provides:
   "(a) Each driver and front seat passenger of a motor vehicle operated on a street or highway in this State shall wear a properly adjusted and fastened seat safety belt ***.
   (f) A law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of this Section." 625 ILCS 5/12-603.1(a),(f) (West 2004).

door vehicle, and (2) that McLaurin had to push the driver's seat forward before he could jump out of the car. When asked how he could radio for backup while holding a flashlight in one hand and a gun in the other, Officer O'Carroll stated that he "probably did that right away - when he jumped out, I grabbed the radio and said that." During further questioning, the officer admitted that he could not radio in with the flashlight in his hand and that he did not really recall where his flashlight was that night. According to Officer O'Carroll, after he exited his vehicle, he pulled his weapon, radioed for help, and began chasing McLaurin.

As he ran down the street, Officer O'Carroll stated that he saw McLaurin reach in front of his body and throw a gun into the gutter under a van parked on 15th Street. While Officer O'Carroll continued chasing McLaurin, he turned south on Lawndale Avenue and a second police car arrived. With Officer O'Carroll behind McLaurin and with a second squad car closing in on him, Officer O'Carroll testified that McLaurin complied with his order to stop and lay down in the street. Officer O'Carroll stated that another officer, Officer Dailey, handcuffed McLaurin while O'Carroll kept his gun on McLaurin.

While Officer Daily stayed with McLaurin in the second squad car, Officer O'Carroll returned to the van and retrieved the "heavy, blue stainless steel" gun from the gutter. Officer O'Carroll testified that the gun he retrieved that night was a High Point 9-millimeter semiautomatic and that it had one bullet in the chamber. After retrieving the gun, Officer O'Carroll returned to the car that he and his partner had originally pulled over. Officer O'Carroll and his partner ticketed and arrested the driver for driving on a suspended license, for driving without insurance, and for not wearing a seatbelt. Two other passengers, Ms. Arlena Jones and her 18-month-old child, were also

in the car. Officer O'Carroll also testified that he and the other officers searched the car and did not find any other guns. When he returned to the police station, Officer O'Carroll inventoried the weapon, but he did not request that the weapon be tested for fingerprints.

Next, Officer Edward Langle, O'Carroll's partner, corroborated Officer O'Carroll's testimony that the officers pulled the car over and that McLaurin jumped from the car and ran away. However, Officer Langle explained that he stayed with the car and its remaining occupants, so he did not see what happened after Officer O'Carroll started chasing McLaurin. Officer Langle testified that Officer O'Carroll returned to the car they had pulled over with a gun but he did not see the gun being tossed or being recovered. Finally, Officer Langle testified that he and his partner did not recover the gun from the backseat of the car that they had pulled over.

Officer Daily testified that on August 17, 2004, he had been a policeman for just five months. He and his partner, Officer Tillman, were patrolling 16th Street near Ridgeway Avenue, close to Officer O'Carroll's location, when they responded to Officer O'Carroll's radio call for assistance. Officer Daily stated that he drove north on Lawndale Avenue and saw McLaurin running from Officer O'Carroll who had his weapon drawn. According to Officer Daily, Officer O'Carroll told McLaurin to get on the ground and, when McLaurin got down, Officer Daily stated that he handcuffed McLaurin and put him inside his squad car. While Officer Daily sat with McLaurin, Officer O'Carroll walked back up Lawndale Avenue. Officer Daily stated that Officer O'Carroll went about 20 feet to a parked van, shouted, "Gun," and picked up a gun before leaving to return to his own squad car on 15th Street.

Outside the presence of the jury, the trial court admitted People's group exhibit 1 (weapon

and bullet) and group exhibit 2 (federal conviction for armed bank robbery in case number 99 CR 776-2) into evidence and heard the testimony of Jackine Austin, a defense witness. Although he was not sworn, Austin, the driver of the car stopped by police on August 17, 2004, was called by the defense and stated to the trial court that, if he were called to testify, he would invoke his fifth amendment right to remain silent to avoid making incriminating statements. When the jury returned to the courtroom, the trial court received People's group exhibits 1 and 2, the State rested, and defense counsel's motion for a directed verdict was denied.

The Defendant's Case

Ms. Arlena Jones testified that on August 17, 2004, at 2:25 a.m., her boyfriend, Jackine Austin, was driving and she was in the front passenger seat of his car. Ms. Jones testified that McLaurin, whom she described as a family friend, was sitting in the backseat of the car with her baby who was in his car seat. The police pulled Austin's car over and Ms. Jones recalled that two officers approached the car from the rear, and that one officer was on each side of the car. Ms. Jones testified that she rolled her window down and one of the officers asked if anyone in the car had a license. She told the officers that she had one but not with her and McLaurin also told the officers that he had a license. Ms. Jones further testified that the police asked everyone to get out of the car and that, while she was getting her baby out of the car seat, the police told Austin and McLaurin to put their hands on the hood of the car. Ms. Jones was holding her baby and watching from approximately five feet away as one of the officers patted down Austin and McLaurin. Ms. Jones testified that the policeman who patted the men down did not find any weapons or contraband.

However, according to Ms. Jones, while the men were being searched by one officer, the

other officer searched the car. Ms. Jones testified that the other officer found a gun in the backseat of the car. Ms. Jones testified that McLaurin never ran from the car and that both men stood with their hands on the hood while the officers searched them and the car. Ms. Jones stated that she did not see the gun before the officer found it; that she did not know if it was in the car that night; and that she did not see McLaurin with the gun on August 17, 2004. Finally, Ms. Jones testified that she knew that the gun belonged to her boyfriend, Austin.

The State's Rebuttal Case

The State called Officer Langle in rebuttal. Officer Langle testified that he and his partner, Officer O'Carroll, pulled a car over on August 17, 2004, ran the license plate, and noticed that the rear seat passenger was moving back and forth. As he and O'Carroll approached the stopped car, Officer Langle stated that McLaurin jumped out of the backseat and started running. While his partner was chasing McLaurin, Officer Langle secured the stopped car by telling the driver to get out and to lie down on the ground. When the driver complied, Officer Langle handcuffed him and took him into custody before getting the female passenger out of the car. One and one half minutes after Officer Langle lost sight of his partner, Langle testified that he saw O'Carroll with McLaurin in custody. Finally, Officer Langle testified that the van that the gun was recovered under was parked on Lawndale Avenue and the State rested its case.

The Jury's Deliberations

On February 5, 2005, the jury began its deliberations at 11:55 a.m. During the jury's deliberations, the jury sent out five notes. McLaurin's attorneys and the assistant State's Attorneys were present for the discussions of the jury notes in the judge's chambers. The defendant was not

informed of the notes and was not present during any of the discussions concerning the jury's notes.

### McLaurin's Motion for a New Trial

On March 3, 2005, McLaurin's attorney filed a motion for a new trial contending that the State had not proven McLaurin guilty beyond a reasonable doubt because, in a case without any forensic evidence connecting McLaurin to the weapon the police recovered, Officer O'Carroll's testimony regarding where he recovered the weapon was contradicted by the testimony of Officers Langle and Daily.

On March 15, 2005, the trial court entered a judgment on the verdict, found McLaurin guilty of unlawful use of a weapon by a felon and sentenced McLaurin to six years of imprisonment. On April 4, 2005, McLaurin's attorney filed a motion to reconsider sentence. On April 8, 2005, the trial court denied McLaurin's motion for reconsideration of the sentence. McLaurin filed a notice of appeal on April 8, 2005.

### The Agreed Statement of Facts

Because no transcripts existed, McLaurin's appellate counsel asked the assistant State's Attorneys and McLaurin's attorney to prepare an agreed statement of facts about the trial proceedings regarding the jury's notes. The trial attorneys agreed to the following statement of facts:

"1. The following persons were present for the discussions held before the Honorable James M. Schreier: Assistant Public Defender Kathryn Maloney (Vahey), Assistant State's Attorneys James V. Murphy and Michael Yoon. Defendant was not present for any of the discussions. Furthermore, discussions of jury notes were not held in open court, they

were held in chambers. [Also present was Assistant Public Defender Brian Barrido.]

2. Jury Note #1: On February 4, 2005, at or about 1:55 p.m., the jury *** requested the exact wording of a stipulation and 'Officer Daley's testimony as to why he was on Longdale headed north.'

***

Response to Jury Note #1: 2:15 p.m., a copy of the stipulation and transcript of Officer Daley's [sic Dailey] testimony was sent back to the jury.

3. Jury Note #2: On February 4, 2005, at or about 3:00 p.m., the jury *** stated, 'We are deadlocked 8-4 and it appears that no one is willing to change their mind.' ***

Response to Jury Note #2: After Judge Schreier gave parties opportunity for suggestions, Judge Schreier responded in writing 'Keep on deliberating with an open mind.' ***

4. Jury Note #3: On February 4, 2002, at or about 3:50 p.m., the jury *** stated, 'We are deadlocked 7-5, based on the evidence presented, this jury feels it cannot a [sic] decision in this case.' ***

Prior to any response to Jury Note #3 being returned to the jury, Jury Note #4 was received by the Court.

Jury Note #4: On February 4, 2002, at or about 4:10 p.m., the jury

\*\*\* stated, 'We are deadlock still at 7-5, based on the evidence presented, this jury does not feel it can reach a decision.' \*\*\*

Response to Jury Notes #3 and #4: There was no written response. Judge Schreier requested his sheriff to inform the jury to keep on deliberating. \*\*\*

5. Jury Note #5: On February 4, 2002, at or about 4:35 p.m., the jury \*\*\* requested the testimony of Officer O'Carroll. \*\*\*

Response to Jury Note #5: The jury was provided with a copy of Officer O'Carroll's testimony.

6. On February 4, 2005, at or about 5:25 p.m., the McLaurin jury returned with its [guilty] verdict. \*\*\* "

ANALYSIS

I. Waiver

On appeal, McLaurin claims that reversible error occurred when, after jury deliberations had begun in his case, (1) he was not informed, consulted, or allowed to be present when the trial court and the attorneys discussed the five jury notes sent to the trial court; and (2) the trial court allowed the sheriff to have ex parte communications with the hung jury. See Illinois v. Allen, 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970); People v. Childs, 159 Ill. 2d 217, 227 (1994); People v. Mallett, 30 Ill. 2d 136 (1964). The State contends, however, that McLaurin waived his right to raise these issues on appeal because he failed to object at trial and he also failed to preserve these issues in a posttrial motion. Piatkowski, 225 Ill. 2d at 564; Woods, 214 Ill. 2d at 470. Our review of the

record revealed that McLaurin failed to raise the aforementioned issues in a postttrial motion; therefore, the issues can only be reviewed if there was a plain error or a defect affecting the defendant's substantial rights.  134 Ill. 2d R. 615(a).[2]

Where, as here, the defendant failed to properly preserve an error for appellate review, a reviewing court may still review the unpreserved error when " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error *** is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' "   People v. Dixon, 378 Ill. App. 3d 535, 546-47 (2007), quoting People v. Piatkowski, 225 Ill. 2d 551, 565 (2007); People v. Herron, 215 Ill. 2d 167, 186-87 (2005); People v. Woods, 214 Ill. 2d 455, 471 (2005); see also 134 Ill. 2d R. 615(a).  Thus, we first review the record for "clear and obvious" trial errors.  Piatkowski, 225 Ill. 2d at 565, citing Herron, 215 Ill. 2d at 186-87; Woods, 214 Ill. 2d at 471.

## II.  Plain Error

### A.  Clear And Obvious Trial Errors

Upon reviewing the record, we discovered two "clear and obvious" trial errors. Piatkowski, 225 Ill. 2d at 565, citing Herron, 215 Ill. 2d at 186-87; Woods, 214 Ill. 2d at 471.  First, we note that

---

[2] Illinois Supreme Court Rule 615(a) provides:
"(a) Insubstantial and Substantial Errors on Appeal. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."   134 Ill. 2d R. 615(a).

after jury deliberations had begun, McLaurin was not informed or consulted or allowed to be present when the trial court and the attorneys discussed the jury's five notes that were sent to the trial court judge.[3] It is well settled that McLaurin had a constitutional right to appear and be present during each critical stage of his trial. People v. Kliner, 185 Ill. 2d 81, 162 (1998); People v. McDonald, 168 Ill. 2d 420, 459 (1995); 725 ILCS 5/115-4(h) (West 2004) ("A trial by the court and jury shall be conducted in the presence of the defendant unless he waives the right to be present"). Moreover, jury deliberations are a critical stage of the trial, involve substantial rights, and a defendant has a right to be present. McDonald, 168 Ill. 2d at 459. Therefore, we find that the trial court's exclusion of McLaurin from the trial court's and the attorneys' discussions of the jury's five notes, a critical stage of the trial, was a "clear and obvious" trial error. McDonald, 168 Ill. 2d at 462; 134 Ill. 2d R. 615(a).

Second, we note that "[a] communication between the judge and the jury following the jury's retiring to deliberate, except one held in open court and in the defendant's presence, deprives the defendant of his constitutional rights." Kliner, 185 Ill. 2d at 162, citing McDonald, 168 Ill. 2d at 459; Childs, 159 Ill. 2d at 227. Thus, once the jury retired to deliberate, the trial court's communications with the jurors were supposed to take place in open court. Kliner, 185 Ill. 2d at 162, citing McDonald, 168 Ill. 2d at 459; Childs, 159 Ill. 2d at 227. Here, the trial judge violated this rule when he permitted the sheriff to have ex parte communications with the jurors after

---

[3] The State conceded in its brief that McLaurin did not knowingly or voluntarily relinquish his right to be present or to participate at trial. See People v. Lofton, 194 Ill. 2d 40, 66 (2000) (it is well settled that an accused's attorney has no power to waive the defendant's right to be present at trial).

receiving the fourth jury note, which stated that the jury was hung seven to five. People v. Hobley, 182 Ill. 2d 404, 459-60 (1998), citing Mattox v. United States, 146 U.S. 140, 150, 36 L. Ed. 917, 921, 13 S. Ct. 50, 53 (1892) and Remmer v. United States, 347 U.S. 227, 229, 98 L. Ed. 2d 654, 656, 74 S. Ct. 450, 451 (1954); see also People v. Mitchell, 152 Ill. 2d 274, 341 (1992) (" '[i]n Illinois, any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial although this presumption of prejudice is not conclusive, the burden is on the State to establish the contact with the jurors was harmless to the defendant' "), quoting People v. Harris, 123 Ill. 2d 113, 132-33 (1988). Therefore, we also find that the trial judge's decision to permit the sheriff to have ex parte communications with the hung jury was a "clear and obvious" error. Piatkowski, 225 Ill. 2d at 565.

## B. The Evidence Was Closely Balanced

Having found clear and obvious trial errors, we are now required to consider the two prongs in the plain error rule to determine (a) whether the evidence presented at trial was so closely balanced that the error alone threatens to tip the scales of justice against McLaurin, or (b) whether the errors were so serious that they affected the fairness of McLaurin's trial, regardless of the closeness of the evidence. Piatkowski, 225 Ill. 2d at 565, citing Herron, 215 Ill. 2d 167, 187 (2005). Our review of the record reveals that the State presented no forensic or physical evidence linking McLaurin to the weapon recovered on August 17, 2004. Instead, the State's case consisted of the testimony of three police officers present at the scene of the incident on August 17, 2004.

First, we note that Officer O' Carroll testified that he chased McLaurin after he exited from the backseat of a two-door parked car, while the front-seat passengers remained seated inside, and

ran away from the scene. Second, we note that Officer O'Carroll testified that McLaurin threw the gun under a van parked on 15th Street, but Officers Daily and Langle testified that the only van they saw that night was parked on Lawndale Avenue. The police officers' conflicting testimony was contradicted by Ms. Jones, the front-seat passenger, who testified that after the car was pulled over, the police officers approached, one on each side of the car, and that the occupants all remained in the car until ordered out. Ms. Jones also testified that McLaurin did not run, but McLaurin and the driver, Austin, were ordered out of the car by the police and searched at the front of the car. Ms. Jones further testified that after the police patted down both Austin and McLaurin, the officers searched the car and found a gun in the backseat. Finally, Ms. Jones testified that the gun the police found in the car belonged to her boyfriend, Austin.

We find the following conflicts in the testimonial evidence presented to the jury: (1) Officer O'Carroll's testimony conflicted with the testimony of Officers Langle and Dailey regarding the location of the van where the gun was allegedly discovered; (2) the three officers' testimony that McLaurin ran after the car was stopped conflicted with Ms. Jones' testimony that McLaurin did not run and was searched while standing next to the car; and (3) Ms. Jones' testimony that the police found the gun in the backseat of the car conflicted with Officer O'Carroll's testimony that he retrieved the gun underneath a van parked on 15th Street. People v. Jarvis, 306 Ill. 611, 613 (1923) (where the evidence is in sharp conflict, it is required that the record be free from prejudicial error); People v. Keefe, 209 Ill. App. 3d 744, 753 (1991) (where two versions of a story were presented to the jury, the evidence was "closely balanced").

We further note that two of the jury's notes establish that the jurors were deadlocked "7-5,

based on the evidence presented." The fact that the jurors were deadlocked "based on the evidence presented" is additional evidence that the State failed to present the jury with overwhelming evidence of McLaurin's guilt. Therefore, based on the absence of any physical evidence linking McLaurin to the gun, the conflicting testimony of the witnesses, and the fact that the jurors reported that they were deadlocked "7-5 based on evidence presented," we hold that the evidence presented to the jury was so closely balanced that the errors tipped the scales of justice against the defendant. Jarvis, 306 Ill. at 613; People v. Porter, 372 Ill. App. 3d 973, 977-78 (2007) (where there was no physical evidence and officer's testimony was uncorroborated by other witnesses, the evidence was closely balanced); Keefe, 209 Ill. App. 3d at 753.

## C. Constitutional Errors

Next, we must determine if McLaurin's constitutional rights were violated by the trial court. We find that excluding McLaurin from the discussions of the jury's notes, without his voluntary and knowing consent, violated substantial constitutional rights protected by the federal and state constitutions. Childs, 159 Ill. 2d at 227; U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8; see also 725 ILCS 5/115-4(h) (West 2004). We also find that the sheriff's ex parte communications with the hung jury is a trial error of constitutional magnitude, implicating the trial court's conduct. Kliner, 185 Ill. 2d at 162; Childs, 159 Ill. 2d at 227-28. The cumulative effect of the trial court's violations of McLaurin's constitutional rights was so serious that it affected the fairness of his trial and implicates the second prong of the plain error rule.

## D. Harmless Error

Because the trial errors in this case are violations of McLaurin's constitutional rights, the

State must prove that the trial errors were "harmless beyond a reasonable doubt." Kliner, 185 Ill. 2d at 162; Childs, 159 Ill. 2d at 227-28, citing Chapman v. California, 386 U.S. 18, 23-24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 827-28 (1967). Normally, a jury verdict will only be set aside when no injury or prejudice results from the trial errors. Hobley, 182 Ill. 2d at 460, quoting Mitchell, 152 Ill. 2d at 341. However, as stated above, where constitutional errors occur, the State is required to demonstrate that the errors were harmless beyond a reasonable doubt. Kliner, 185 Ill. 2d at 161-62, citing Childs, 159 Ill. 2d at 227-28.

Here, the State argues that the trial errors were harmless beyond a reasonable doubt because (1) the jury deliberated for an hour and fifteen minutes after the sheriff's ex parte communication, and (2) there was no coercion or jury prejudice since the fluctuating numerical divisions (8 to 4, 7 to 5, then 7 to 5) reported by the jury show that the jury was never hopelessly deadlocked. We are not persuaded. We note that the record does not establish the length of time the jury deliberated after the sheriff's ex parte communication with the jurors.[4] In addition, the State's reliance upon the numerical divisions reported in the jury's notes as evidence that the jury was not hopelessly deadlocked is inconsistent with two of the jury's notes that stated: "We are deadlocked 7-5, based on the evidence presented, this jury feels it cannot reach a decision." In light of the preceding, the State has failed to present any evidence (1) that the jury was not coerced by the sheriff's ex parte

---

[4] The record shows that the trial court received the fourth jury note at 4:10 p.m., but there is no indication in the record of what time it was when the sheriff actually spoke with the jury or how long the sheriff actually communicated with the jury before the jury sent a fifth note at 4:35 p.m. asking for a transcript. Further, there is no indication of what time it was when the jury received the requested transcript before reaching a guilty verdict at 5:25 p.m..

communications, or (2) that the trial court's errors were harmless beyond a reasonable doubt. Kliner, 185 Ill. 2d at 161-62, citing Childs, 159 Ill. 2d at 227.

We find that McLaurin was prejudiced (1) by the trial court excluding him from the discussion of the jury's notes because he was unable to participate in his defense, and (2) by the sheriff's ex parte communications with the hung jury because he was convicted and sentenced to the penitentiary after the ex parte communications. Kliner, 185 Ill. 2d at 161-62; Childs, 159 Ill. 2d at 227-28. We note that after the jury's first two notes, the trial judge sent written responses to the jury and the jury continued to deliberate, but the trial judge permitted the sheriff to have ex parte communications with the jury after receiving the next two jury notes. Where a deprivation of liberty has occurred, as in this case, we will not speculate on the effect of the sheriff's ex parte communications on the jurors because McLaurin's constitutional rights were violated and the evidence was closely balanced. Therefore, we hold (1) that the trial judge's decision not to follow section 115-4(h) of the Code of Criminal Procedure of 1963 but to exclude McLaurin during critical stages of the trial when the jury's notes were discussed by the trial judge and the attorneys, and (2) that the trial judge's decision to permit the sheriff to have ex parte communications with the hung jury before it reached a guilty verdict denied McLaurin his right to a fair trial and these errors prejudiced McLaurin and force this court to question the integrity of the judicial process. Dixon, 378 Ill. App. 3d 546-47; 725 ILCS 5/115-4(h) (West 2004). Accordingly, because the State has failed to show that McLaurin's exclusion during the discussions of the jury's notes and the sheriff's ex parte communication with the jury were harmless errors beyond a reasonable doubt, we hold that the trial court's errors affected the fairness of McLaurin's trial and the integrity of the judicial process.

Finally, we address the issues raised in the dissent. Following Piatkowski and Herron, the majority considered McLaurin's forfeited claims of trial error under the two prongs of the plain error rule set forth in those cases. See Piatkowski, 225 Ill. 2d at 565, citing Herron, 215 Ill. 2d at 187; see also 134 Ill. 2d R. 615(a). The dissent, however, would deny plain error review in this case (1) because the evidence presented to the jury was not closely balanced, and (2) because the defendant has not shown that the trial court's errors prejudiced him. In support of its first position, the dissent contends that the inconsistent police testimony regarding where the weapon was recovered was of little import and that defense witness Arlena Jones' testimony was not entitled to significant weight. We disagree.

Where a defendant is charged with and convicted of aggravated unlawful use of a weapon by a felon, we find that it would be a denial of due process for this court to take the position that evidence related to the weapon is unimportant, especially, where the police officers' testimony conflicts about where the officer recovered the weapon. Moreover, we find that conflicting police testimony regarding the location of the recovered weapon becomes more, not less, important where, as here, there was no physical evidence linking McLaurin to the weapon and the evidence presented to the jury was closely balanced. Porter, 372 Ill. App. 3d at 977-78, citing Herron, 215 Ill. 2d at 187.

The dissent argues that the evidence presented to the jury was not closely balanced because Arlena Jones' testimony should be given little weight because she was McLaurin's "close family friend" and she had known him for 10 years. On this point, we note that the jury, as trier of fact, was responsible for observing the witnesses, assessing their credibility, and determining the weight to be given each witness's testimony. People v. Ortiz, 196 Ill. 2d 236, 259 (2001). Significantly, the

dissent does not comment on the fact that the jury was hung 7 to 5 and could not reach a verdict based on the evidence presented at trial, evidence that largely consisted of the testimony of the three police officers and Arlena Jones. The dissent correctly observes that Arlena Jones testified that the gun the police recovered belonged to her boyfriend, Jackine Austin, but then fails to consider that, outside the jury's presence, Jackine Austin told the court that he was unwilling to testify in McLaurin's defense because he wanted to avoid making incriminating statements. We find that the evidence was closely balanced and that the trial judge's errors, including the judge's decision to permit the sheriff to have ex parte communications with the hung jury shortly before McLaurin was convicted, tipped the scales of justice against McLaurin. Herron, 215 Ill. 2d at 187; Keefe, 209 Ill. App. 3d at 753.

In addition, the dissent studiously ignores the majority's focus, under the second prong of the plain error rule, (1) on the magnitude of the trial judge's two violations of McLaurin's constitutional rights, and (2) on the fact that the cumulative effect of the trial judge's violations of McLaurin's constitutional rights was so serious, regardless of the closeness of the evidence, that the errors affected the fairness and integrity of McLaurin's guilty verdict. Herron, 215 Ill. 2d at 187. In spite of the fact the majority's opinion established that the trial court's violations of McLaurin's constitutional rights were errors, the dissent incorrectly insists that McLaurin was required to demonstrate that he was prejudiced. The dissent's analysis conflates the two-prong plain error rule set forth in Piatkowski and Herron and incorrectly focuses on the prejudice defendant must show under the first prong. Piatkowski, 225 Ill. 2d at 565, citing Herron, 215 Ill. 2d at 187; Kliner, 185 Ill. 2d at 161-62; Childs, 159 Ill. 2d at 227-28. The dissent ignores the majority's finding, under the

-18-

second prong of the plain error rule, that the constitutional errors in this case were so serious that they affected the fairness of the defendant's trial and challenged the integrity of the judicial process. Piatkowski, 225 Ill. 2d at 565. Thus, in light of Piatkowski and Herron, the dissent's reliance on People v. Hickey, 204 Ill. 2d 585, 622-23 (2001), to support its contentions that McLaurin bore the burden of showing prejudice or that his presence would have affected the ex parte communication is misplaced. Accordingly, because the supreme court has held that a defendant's substantial rights are implicated when he is excluded from the trial court's discussions of a hung jury's notes (McDonald, 168 Ill. 2d at 459), and when the sheriff has ex parte communications with a jury, in this case, shortly before a guilty verdict was returned, we believe that the dissent ignored the fact that the trial judge's cumulative errors violated McLaurin's fundamental right to a fair trial. Kliner, 185 Ill. 2d at 161-62; Childs, 159 Ill. 2d at 227-28, citing Chapman v. California, 386 U.S. 18, 23-24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 827-28 (1967).

CONCLUSION

In light of the violations of McLaurin's constitutional rights, we are reversing his conviction, therefore, it is unnecessary for this court to reach the defendant's other contentions on appeal. Both the federal and state constitutions provide that no person shall be put in jeopardy twice for the same criminal offense. People v. Pinkonsly, 207 Ill. 2d 555, 564 (2003), citing U.S. Const., amends. V, XIV; Ill. Const.1970, art. I, §10. "The double jeopardy clause protects a defendant from: (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense." People v. Whitfield, No. 102985, slip op. at 13 (December 13, 2007), citing People v. Gray, 214 Ill. 2d 1, 6 (2005). "The prohibition against double jeopardy

forbids a second trial if the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt in the initial proceeding." People v. Davis, 377 Ill. App. 3d 735, 747 (2007), citing People v. Taylor, 76 Ill. 2d 289, 309 (1979). We note that a reversal for trial error is a determination that the defendant has been convicted by means of a fundamentally defective judicial process. People v. Olivera, 164 Ill. 2d 382, 393 (1995). A reversal for evidentiary insufficiency occurs when the prosecution has failed to prove its case, and the only proper remedy is a judgment of acquittal. Olivera, 164 Ill. 2d at 393. In this case, we find that the evidence was sufficient to convict and a new trial is required to correct the trial court's errors that deprived McLaurin of a fair trial. Accordingly, for the foregoing reasons, we reverse and remand this case for a new trial.

Reversed and remanded.

CAMPBELL, J., concurs.

MURPHY, J., dissents.

JUSTICE MURPHY, dissenting:

I agree that the practice of documenting and preserving every communication between the jury and the court is a wise one. At times it may be practical and necessary to proceed without a court reporter, especially for minor or administrative communications, but if that does occur, the substance of the communication should be made part of the record as soon as practicable. However, unlike the majority, I believe that the trial court's actions did not rise to the level of meriting reversal. I respectfully dissent and would affirm defendant's conviction.

First, I would not invoke the plain-error exception to the waiver rule. See *People v. Cloutier*, 178 Ill. 2d 141, 164 (1997); 134 Ill. 2d R. 615(a). In *People v. Kliner*, 185 Ill. 2d 81 (1998), our supreme court held that even though the defendant did not object to the trial court's *ex parte* communications with the jury or include the issue in his posttrial motion, "we have determined that application of the waiver rule is less rigid where the basis for the objection is the trial court's conduct." *Kliner*, 185 Ill. 2d at 161; *People v. Williams*, 173 Ill. 2d 48, 85 (1996); *People v. Nevitt*, 135 Ill. 2d 423, 455 (1990); *People v. Comage*, 303 Ill. App. 3d 269, 272 (1999). Where the trial court chose to discuss the jury notes outside of defendant's and the court reporter's presence, and the trial court sent the bailiff to relay his message to the jury, the trial court's conduct is clearly the basis of defendant's argument on appeal. Therefore, I would hold that the waiver rule does not apply. *Kliner*, 185 Ill. 2d at 161; *Williams*, 173 Ill. 2d at 85; *Nevitt*, 135 Ill. 2d at 455; *Comage*, 303 Ill. App. 3d at 272. Since the waiver rule is inapplicable, there is no need to invoke the plain-error exception to the waiver rule, and the analysis should focus on whether defendant suffered prejudice.      A jury verdict will not be set aside where it is apparent that no harm or prejudice resulted from the communication. *People v. McDonald*, 168

Ill. 2d 420, 460 (1995). The key question in determining prejudice is whether defendant's presence could have had any effect on the communication. *People v. Blalock*, 239 Ill. App. 3d 830, 841 (1993); *People v. King*, 165 Ill. App. 3d 464, 471-72 (1988). In *Kliner*, for example, the defendant argued that he was harmed by the trial judge's *ex parte* communication with the jury because he was denied the opportunity to make suggestions regarding the appropriate response to jury notes. Our supreme court analyzed the substance of the trial court's responses to determine whether the error was harmless beyond a reasonable doubt. *Kliner*, 185 Ill. 2d at 163-66. See also *Comage*, 303 Ill. App. 3d at 272; *People v. Stropoli*, 146 Ill. App. 3d 667 (1986) (no prejudice when the trial court answered two questions outside the defendant's and his counsel's presence because the judge correctly and appropriately responded to the jury's questions).

In their first and fifth notes, the jury requested the stipulation and transcripts of Daily's and O'Carroll's testimony. It is within the sound discretion of the trial court to allow or refuse a request by the jury to review testimony in a criminal case. *People v. Pierce*, 56 Ill. 2d 361, 364 (1974). Transcripts of testimony may be made available to the jury if the court believes that the transcripts will be helpful to jurors. *People v. Flores*, 128 Ill. 2d 66, 93 (1989). "[W]hen the jury itself requests the opportunity to examine transcripts of the testimony, the trial court must assume that the jury believes that such review would be helpful." *People v. Modrowski*, 296 Ill. App. 3d 735, 747 (1998).

The jury had already heard Daily's and O'Carroll's trial testimony. Furthermore, the agreed statement of facts provides that the trial court's response was to send these materials to the jury after discussions with counsel. Significantly, defendant does not contend on appeal that

the trial court erred when it provided these materials to the jury. The trial court's responses to the jury's requests to the first and fifth notes were within its discretion and, therefore, defendant did not suffer any prejudice. See *Kliner*, 185 Ill. 2d at 164.

In their second note, the jury stated that they were "deadlocked 8-4 and it appears that no one is willing to change their mind." After giving counsel for both sides opportunities for suggestions, the trial court sent a note back to the jury to "keep on deliberating with an open mind." The jury sent a third note at 3:50 p.m. stating that they were deadlocked 7 to 5. "Based on the evidence presented, this jury feels it cannot [*sic*] a decision in this case." At 4:10 p.m., before a response to the third note was returned to the jury, a fourth note was sent out providing, "We are deadlock [*sic*] still at 7-5. Based on evidence presented, this jury does not feel it can reach a decision." The trial court did not send a written response. Instead, it instructed its bailiff to inform the jury to continue deliberating.

Whether a jury should continue to deliberate after it has indicated that it is hopelessly deadlocked is also within the discretion of the trial court. *People v. Harris*, 294 Ill. App. 3d 561, 568 (1998). "An instruction to a deadlocked jury is improper if it hastens a verdict, coerces a juror to make a determination in conflict with the juror's views, or otherwise interferes in deliberations such that a defendant is prejudiced." *People v. Kegley*, 227 Ill. App. 3d 48, 57 (1992). However, a trial court has a duty to provide guidance to a jury that is not hopelessly deadlocked. *Kegley*, 227 Ill. App. 3d at 57. In addition, where the trial court receives an unsolicited statement regarding the numerical division of the jurors, it is not error to order the jury to continue its deliberations. *People v. Iozzo*, 195 Ill. App. 3d 1078, 1086 (1990). Here, the judge's written response to the jury's second note was to continue deliberating with an open

mind, and in response to third and fourth notes, the trial court told the bailiff to instruct the jury to continue deliberating. Defendant does not argue that the court's responses coerced a verdict or otherwise interfered with the jury's deliberations.

Defendant does not explain what would have occurred if he had been present. Instead, he claims generally that his presence would have contributed to the fairness of the procedure. Our supreme court rejected a similar argument in *People v. Hickey*, 204 Ill. 2d 585, 622-23 (2001), where the defendant was not present when the jury sent five notes during deliberations. The defendant claimed that his constitutional right was violated because he could have had some input into the nature of the communication with the jury. *Hickey*, 204 Ill. 2d at 621-22. The court held, however, that the defendant's " 'argument is based on broad principles and is not adapted to the specifics of this case.' [Citation.]" *Hickey*, 204 Ill. 2d at 622. As in *Hickey*, here there is nothing in the record indicating that defendant's presence would have contributed to the fairness of the procedure. See *Hickey*, 204 Ill. 2d at 622-23; *People v. Lee*, 303 Ill. App. 3d 356, 368 (1999) (any error would be harmless because "we would be required to speculate as to what action defendant or his counsel would have urged with respect to the notes"); *People v. Hernandez*, 229 Ill. App. 3d 546, 553 (1992) (rejecting defendant's speculation that if he had been present for discussion regarding jury question, his attorney might have objected to the judge's proposed response).

As for the sheriff's communication with the jury, the majority relies in part on the fact that defendant was only convicted after that communication, while they continued to deliberate after the jury receiving the judge's written responses to their first two notes. However, the majority disregards that in the time between the bailiff's communication with them and their verdict, the

-24-

jury also requested and received a transcript of O'Carroll's testimony. Having heard the trial testimony and received the stipulation and transcripts of Daily's and O'Carroll's testimony, the jury reached their decision and convicted defendant.

Furthermore, I disagree that the evidence was sufficiently close to merit review under the first prong of the plain-error rule. See 134 Ill. 2d R. 615(a). Officers Edward Langle and John O'Carroll both testified that defendant jumped from the backseat of the car and began running. As Langle secured the car, O'Carroll chased defendant and saw him throw the gun into the gutter, under a van. O'Carroll testified that after defendant was apprehended, he returned to the van and recovered the gun. Officer Demarko Daily corroborated that defendant was running southbound on Lawndale and that O'Carroll found a gun under a van. Langle did not see O'Carroll when he found the gun but noticed that O'Carroll returned to their squad car with a gun.

The majority relies on defense witness Arlena Jones's testimony that the gun was her boyfriend's and that defendant never ran from the police that night; however, it is significant that she was a close family friend of defendant whom she had known for 10 years. The majority notes on this point that the jury, as trier of fact, was responsible for observing the witnesses, assessing their credibility, and determining the weight to be given their testimony. I note that after observing Jones, assessing her credibility, and determining the weight to be given her testimony, the jury apparently did not believe her, as they chose to convict defendant. The majority also relies on O'Carroll's statement that he recovered the gun from underneath a van on 15th Street, while Daily and Langle testified that the van was on Lawndale. Where the gun was thrown, according to the officers' testimony, was near an intersection, and Daily underscored that he saw the gun "on the corner of 15th and Lawndale." Accordingly, I do not read the same import into

the testimony as the majority.

In addition, although the majority's analysis relies on the jury's deadlock notes, the jury votes changed from 8 to 4 to 7 to 5 within 50 minutes, and the second 7 to 5 note simply reiterated the note of 20 minutes before, since the jury had not yet received a response from the court. See *People v. Vasquez*, 368 Ill. App. 3d 241, 252 (2006) (where two officers saw the defendant take possession of a loaded gun, and the only witness who challenged the testimony was the defendant's half brother, who had a close personal relationship with him, "[t]he mere fact that the jury indicated in one note that it could not reach a decision does not render the evidence closely balanced"); *People v. Smith*, 341 Ill. App. 3d 530, 543 (2003) (the jury being undecided for four hours was not sufficient to make the evidence close for plain-error purposes). Therefore, under these circumstances, I do not believe that the jury's notes rendered the evidence closely balanced.

To the extent that the majority relies on the second prong of the plain-error rule, I reiterate my above analysis as to the trial court's responses to the jury notes. Furthermore, this court has expressed doubt as to whether Illinois categorically presumes prejudice when there is outside contact with a juror. *People v. Ward*, 371 Ill. App. 3d 382, 405 (2007). *Ward* noted that the Supreme Court appears to have departed from its position in *Remmer v. United States*, 347 U.S. 227, 98 L. Ed. 654, 74 S. Ct. 450 (1954) (see *United States v. Olano*, 507 U.S. 725, 738, 123 L. Ed. 2d 508, 522, 113 S. Ct. 1770, 1780 (1993); *Smith v. Phillips*, 455 U.S. 209, 215, 71 L. Ed. 2d 78, 85, 102 S. Ct. 940, 945 (1982)). In addition, since *People v. Hobley*, 182 Ill. 2d 404, 460 (1998), was decided, "our supreme court appeared to shift toward a more fact-intensive, case-specific analysis in *People v. Williams*, 209 Ill. 2d 227 (2004)." *Ward*, 371 Ill. App. 3d at

404. *Ward* concluded based on *Williams*, "Illinois no longer appears to categorically presume prejudice when there is outside contact with a juror." *Ward*, 371 Ill. App. 3d at 405.

In addition, defendant cited several federal cases in support of his argument that prejudice must be presumed when a trial court uses a bailiff as a medium for communicating with the jury. Not only do these cases involve *habeas corpus* petitions, but they are also factually distinguishable. In *United States ex rel. Tobe v. Bensinger*, 492 F.2d 232 (7th Cir. 1974), after the jury reached a verdict, defense counsel discovered that three inquiries made of the court, all involving the possibility of reaching a nonunanimous verdict, never reached the court. Affidavits established that the jury asked the bailiff several times what would happen if they reached a nonunanimous verdict, and the bailiff, without the trial court's knowledge, told them "over and over again in one form or another that 'You must reach a decision.' " *Tobe*, 492 F.2d at 237-38. Here, there are no allegations of juror coercion. Furthermore, unlike the *Tobe* bailiff, here the bailiff communicated to the jury not only with the trial court's knowledge, but at its direction.

In *Moore v. Knight*, 368 F.3d 936 (7th Cir. 2004), the deliberating jury sent a note to the judge asking where the defendant lived, the distance between his home and the location of the crime, and the time that he arrived home on the night in question. Without conferring with any attorneys, the trial court responded via a bailiff either that there was no evidence in the record regarding this question or that their questions could not be answered. Unlike here, where the jury's notes indicated that it was deadlocked, the bailiff in *Moore* responded to factual questions about the case, which went to the very heart of the defendant's alibi defense. Furthermore, the *Moore* bailiff's answer was incorrect because the defendant presented testimony as to when he arrived home as part of his alibi defense. Further exacerbating the incorrect response in *Moore*

was the fact that the jurors were not permitted to take notes during the trial and that the trial court instructed them that they would not be allowed to ask any more questions. In addition, unlike the court in *Moore*, here, the trial court consulted with counsel before responding to the jury's questions.

Finally, while an attorney cannot waive a defendant's presence (*People v. Lofton*, 194 Ill. 2d 40, 66 (2000)), it is significant that, unlike *People v. Childs*, 159 Ill. 2d 217 (1994), defendant's attorneys were present during discussions on both the jury notes and the decision to send the bailiff instead of giving a written response. See *People v. Smith*, 321 Ill. App. 3d 523, 528-29 (2001) ("Where the defendant or his attorney had knowledge of the court's communication with the jury at the approximate time of the jury's inquiry, plain error has not been found.").

I agree that the trial court should have provided a written note to the jury instead of sending the sheriff to tell them to continue deliberating. It also should have made a record of the discussions on the jury notes. However, where both of defendant's attorneys were present for all of the discussions, the evidence is not closely balanced, the judge's responses to the jury notes were correct, and any presumption as to prejudice for outside contact with a jury has been called into question, the trial court's actions did not merit reversal. Therefore, I would affirm defendant's conviction.